IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| NEW VIRGINIA MAJORITY EDUCATION FUND and AMYLA BRYANT,<br><br>        Plaintiffs,<br><br>v.<br><br>FAIRFAX COUNTY BOARD OF ELECTIONS; GARY SCOTT, in his official capacity as Director of the Office of Elections and General Registrar; and STEPHEN HUNT, KATHERINE HANLEY, and BETTINA LAWTON in their official capacities as members of the Fairfax County Board of Elections,<br><br>        Defendants. | Civil Action<br>Case No. _____<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 |

**INTRODUCTION**

1. This lawsuit seeks to protect the precious right to vote for hundreds of Virginia citizens who are qualified to vote under Virginia law but whose voter registration applications were denied due to an arbitrary decision to reject their applications because they did not list a specific George Mason University ("GMU") dormitory and/or dorm room number on their application. Defendants' rejection of these applications—in the weeks before the upcoming November 5, 2019 state elections—conflicts with Fairfax County's long-standing practice of accepting applications despite not specifying a GMU dorm or dorm room, a practice that conformed with Virginia Department of Elections guidance and the Virginia Administrative Code. Accordingly, Plaintiffs ask this Court to issue injunctive relief to remedy the improper rejection of these voter registration applications and prevent these qualified voters from losing their right to vote in the upcoming election.

2. Defendant's' decision to reject the approximately 170 voter registrations (including that of Plaintiff Amyla Bryant) in contravention of Fairfax County's long-standing practice was done without any or adequate advance notice to GMU students or to organizations (including Plaintiff New Virginia Majority Education Fund) who conduct voter registration drives in Virginia. Not only did the Defendants not inform the students or organizations, the Fairfax County Elections Office website is entirely devoid of any mention of this change in policy.

3. Defendants failed to provide reasonable and meaningful opportunities for students to provide dorm information before the rejection of their applications and before the expiration of the registration deadline. The students' only recourse options are to pay a fee and file an appeal in the Fairfax County Circuit Court (which would not guarantee a resolution prior to the election) or to file a new registration form (which would not result in timely enrollment on the active voter rolls for the upcoming November 5, 2019 election).

4. In pre-litigation discussions, Defendant Gary Scott, Director of the Fairfax County Office of Elections and General Registrar, has asserted that he has notified affected GMU students that he will accept the dorm information from them until 5:00 p.m. on November 2, 2019, and will allow those applicants to vote in the November 5, 2019 election if they provide the dorm information by that new deadline. However, this remedy is woefully inadequate given that Defendants rejected approximately 170 voter registration applications for not specifying a GMU dorm, a practice that was not previously announced and which was inconsistent with Fairfax County's longstanding practice; did not provide any cure option to students at the time of denial; did not take sufficient actions to remedy the improper rejections; failed to assure that improperly rejected applicants will receive notification in time to provide the dorm information

by November 2, 2019; and otherwise failed to assure that these citizens will be able to vote in the upcoming election.

5. Accordingly, Plaintiffs respectfully move the Court for an Order compelling the Registrar to accept the voter registrations and place the affected GMU students on the active voter rolls. In the alternative, Plaintiffs move the Court for an Order compelling the Defendants (i) to allow the impacted applicants to provide their dorm name and room number to a poll worker when they request a ballot through the close of the polls on November 5, 2019, (ii) to permit the impacted applicants to cast a regular ballot if they do so, (iii) to provide relief for any affected students who may need to vote by absentee ballot, (iv) to contact each voter individually in-person or by phone before the election to explain such voters' rights, and (v) to grant additional relief to prevent the future disenfranchisement of GMU students for the same reasons.

## JURISDICTION AND VENUE

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution.

7. This Court has jurisdiction to grant both declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

9. Plaintiff NEW VIRGINIA MAJORITY EDUCATION FUND ("NVM") is a non-profit group that uses mass organizing, leadership development, and strategic communications to champion the voices of communities of color, women, college students, working people,

LGBT persons, and youth. NVM has visited over one million voters and has trained hundreds of organizers, volunteer leaders, and poll monitors. The organization has also staffed regional command centers to respond to citizens' questions about voter eligibility and voting requirements.

10. Plaintiff NVM has led voter registration drives throughout the Commonwealth resulting in thousands of new voters, including several thousand who recently had their rights restored. In the weeks leading up to the October 15, 2019 voter registration deadline for the November 5, 2019 election, Plaintiff NVM helped over 6,000 Virginians register to vote.

11. Plaintiff NVM has been conducting voter registration drives on GMU's Fairfax, Virginia campus for at least five years, and began conducting voter registration drives for this upcoming election in July 2019.

12. Because of Defendants' change in policy with respect to accepting voter registration applications from GMU students without requiring those students to identify a dormitory and/or dorm room number, Plaintiff NVM has experienced a significant diversion of its resources. Absent the previously unannounced policy change, NVM staff members would have otherwise spent more time and resources on providing voters with information about participating in the November 2019 election and get-out-the vote initiatives, including assisting voters in identifying the locations of their precincts, providing them with information about Virginia's photo ID requirements and otherwise encouraging voters to turn out to vote in the election. As a result of the diversion of its time and resources to helping GMU students impacted by Defendants' change in policy and responding to inquiries from other students with concerns about the issue, Plaintiff NVM has contacted hundreds of fewer voters than it would have if this problem had not arisen because staff members have been pulled away from get-out-the-vote work

to assist the GMU students impacted by Defendants' change in policy.

13. Plaintiff AMYLA BRYANT is a freshman at GMU whose voter registration application was rejected because she did not provide her dorm name and room number. Plaintiff BRYANT did not learn that her application had been rejected until she was informed of that possibility by a fellow student in her class on October 28, 2019. Plaintiff BRYANT is not currently registered to vote in Virginia. Absent relief being granted by this Court, Plaintiff BRYANT is at risk of being disenfranchised in the November 5, 2019 election.

14. Defendant GARY SCOTT is the current Fairfax County General Registrar who was appointed by Defendant BOE pursuant to Va. Code § 24.2-110. Among other duties, Defendant SCOTT is responsible for determining whether a voter registration applicant is qualified to vote and for notifying denied voter registration applicants with the reason for the denial in writing. Va. Code § 24.2-114. Defendant SCOTT is sued herein in his official capacity. At all times alleged here, Defendant SCOTT acted under color of law.

15. Defendant FAIRFAX COUNTY BOARD OF ELECTIONS ("BOE") is the electoral board for Fairfax County, Virginia and constituted pursuant Va. Code § 24.2-106, *et seq*. It is comprised of three appointed members (Defendants STEPHEN HUNT, KATHERINE HANLEY, and BETTINA LAWTON) and is responsible for the appointment and the removal of general registrar for Fairfax County.

16. Defendant BOE is responsible for supervising the performance of the general register and is authorized to remove the general registrar if he or she fails to discharge the duties of the office according to law. In connection with its duty to supervise the general registrar's performance, Defendant BOE is also responsible for conducting a mandatory annual performance review of the general registrar and is required to complete that review by August 1

of each year in accord with directives from the State Board of Elections pursuant to Va. Code § 24.2-109.1.

17. Defendant BOE's duties also include, but are not limited to, preparation of ballots, the administration of absentee ballot provisions, the conduct of the election, and ascertaining of the results of the election. Va. Code § 24.2-109.

18. Plaintiffs are informed and believe and thereon allege that Defendant BOE approved, authorized, ratified, and/or otherwise agreed with Defendant SCOTT's change in policy to require GMU Fairfax campus students to provide their dorm name and room number on their voter registration forms without providing any or adequate notice of this change before it was implemented.

19. At all times alleged herein, Defendant BOE acted under color of law and in the capacity as a policymaker for Fairfax County on matters relating to elections and voter registration, and with respect to the hiring, training, and supervision of the general registrar.

20. Defendants HUNT, HANLEY, and LAWTON, all members of the BOE, are being sued in their official capacities.

## STATEMENT OF FACTS AND LAW

21. Virginia state law requires that, in order to register, a person be 18 years of age on or before the day of the election and a resident of the Commonwealth and of the precinct in which he or she offers to vote. Va. Code §§ 24.2-101, -400.

22. The voter registration deadline for Virginia's November 5, 2019 election was on Monday, October 15, 2019. Va. Code § 24.2-416. Virginia residents are barred from casting a ballot that will be counted if they do not meet the registration deadline.

23. GMU instructs students residing on GMU's Fairfax, Virginia campus to use

"4450 Rivanna River Way, Fairfax, VA 22030," along with a unique four-digit campus mailbox number, as their address. *See* George Mason University Mason Families, *Parent Perspective: What's Up with the Mail Hub?*, https://masonfamily.gmu.edu/parent-perspective-whats-up-with-the-mail-hub-2/ (last visited Oct. 30, 2019). Students are also informed that their GMU "personal mailbox" is **not** a Post Office box. *See* Georgia Mason University Mail Services, *FAQs* at No. 5, https://printandmail.gmu.edu/mail/#mail-tab-2 (last visited Oct. 30, 2019).

24. On information and belief, the BOE designated the GMU Fairfax campus as the University (Number 134) voting precinct in 2011. GMU students registered to vote at the Fairfax campus address vote at a polling place located on campus at Merten Hall, 4441 George Mason Boulevard, Fairfax, Virginia 22030. *See* Fairfax Office of Elections, *Commonwealth of Virginia County of Fairfax 2019: Districts, Precincts & Polling Places*, https://www.fairfaxcounty.gov/elections/sites/elections/files/assets/precincts/precinct_locator_effective_04092019_web.pdf (last visited Oct. 30, 2019).

25. Students residing on the Fairfax campus of GMU are not required to live in the same dormitory or in the same dorm room for the entirety of the time they reside on campus. In fact, upperclassmen have many more choices of on-campus housing units and dorms relative to first-year students, making it unlikely that students will remain in the same housing unit for the duration of their residency on campus. *See* George Mason University Housing & Residence Life, *Upper-Class Students*, https://housing.gmu.edu/housing-options/upper-class-students (last visited Oct. 30, 2019).

26. Until the past few weeks, the BOE and its General Registrar accepted voter registration applications from GMU students residing on its Fairfax campus without requiring students to provide a dorm name or room number.

7

27. Such arrangement makes sense given that the entire campus has been designated as a voting precinct with a single polling location.

28. However, on information and belief, beginning in October 2019, Defendants have rejected voter registration applications during the current election cycle from students living on the GMU Fairfax campus and providing "4450 Rivanna River Way" or "4400 University Drive," with a personal mailbox number, as their address.

29. Defendants adopted this change in policy without providing any official notice to GMU students on its website, https://www.fairfaxcounty.gov/elections/.

30. Notably, there is still no official notice on the Fairfax County Elections Office website about this change in practice nor is there any official notification that the Defendants would reject voter registration applications that did not include a dorm name or room number.

31. Neither the Virginia voter registration form nor the federal voter registration form include any instructions informing college students that they must provide their dorm name and room number on the form to avoid having the application rejected, nor do the forms provide a space for such information. *See* Virginia Department of Elections, *Virginia Voter Registration Application*, https://www.elections.virginia.gov/media/formswarehouse/veris-voter-registration/applications/Voter-Registration-Application.pdf (last visited Oct. 30, 2019); U.S. Election Assistance Commission, *Register to Vote in Your State by Using This Postcard Form and Guide*, https://www.eac.gov/assets/1/6/Federal_Voter_Registration_ENG.pdf (last visited Oct. 30, 2019).

32. In addition, the guidance for college students about voter registration on the Virginia Department of Elections' website provides contrary information about what address information they need to provide. The websitespecifically states that: **"A dormitory or college**

**address can be an acceptable residential address and does not disqualify you from voting."**



*See* Virginia Department of Elections, *College Student Info*, https://www.elections.virginia.gov/registration/college-student-info/ (last visited Oct. 30, 2019) (emphasis added).

33. Pursuant to the Virginia Administrative Code, title 1, section 20-40-40(C), Defendants were prohibited from making this policy change. When an applicant provides a commercial or other non-traditional address, such as the address GMU directed its students to use while they reside on campus, the registrar "shall not deny the application, but shall ask the applicant to provide additional information in support of the application. . . . [T]he application shall not be accepted or denied while the registrar is awaiting the applicant's response."  1 Va.

Admin. Code § 20-40-40(C).

34. Notwithstanding the State Department of Elections' public guidance and its own prior practice, Defendants rejected approximately 170 GMU students' voter registration applications without asking for additional information, on a form prescribed by the BOE, and without awaiting the applicants' responses, as required by 1 Va. Admin. Code § 20-40-40(C).

35. In subsequent correspondence, Defendant SCOTT has asserted that he has notified affected GMU students that he will accept the dorm information from them until 5:00 p.m. on November 2, 2019, and will allow the affected applicants to vote in the November 5, 2019 election if they provide the dorm information by the November 2 deadline. However, it remains unclear whether Defendant SCOTT has the authority to extend this deadline past the book closing date in the absence of a Court order in light of the book closing deadline referred to in 1 Va. Admin. Code § 20-40-40(C).

36. The fundamental constitutional right to vote cannot be conditioned upon GMU students' compliance with Defendants' arbitrary change in policy, particularly when (i) Defendants failed to provide them with any or adequate advance notice that they would be required to provide their dorm name and room numbers, and (ii) such rejections are inconsistent with the State Department of Elections' public pronouncement regarding the registration of college students.

37. Moreover, Defendants' shifting positions on how these applications would be handled under the new apparent policy has added more uncertainty and confusion to an already confusing situation caused by Defendants' arbitrary change in the policy.

38. Even now, just days before the November 5, 2019 election, it is unclear how all of the rejected applications will be treated if they did not include their dorm information and

whether Defendant SCOTT even has the legal authority to extend the deadline to submit additional curative information past the book closing date. As a result, the Defendants' potentially unlawful extension of the cure period to November 2, 2019, could very well be an illusory remedy for students affected by this arbitrary policy change.

39. Without remedial relief ordered by the Court, Plaintiff NVM will continue to suffer harms to its institutional goal of expanding voter access by being forced to divert resources from otherwise valuable outreach efforts to remedy the confusion and potential disenfranchisement caused by Defendants.

40. Without remedial relief ordered by the Court, qualified prospective voters, including Plaintiff BRYANT, are in the immediate danger of being disenfranchised due to no fault of their own in the November 5, 2019 election. She and others may continue to face difficulties registering to vote as a result of this policy in the future.

**COUNT ONE**
**VIOLATION OF THE FUNDAMENTAL RIGHT TO VOTE**
**42 U.S.C. § 1983, FIRST AND FOURTEENTH AMENDMENTS**

41. Plaintiffs re-allege and incorporate by reference every allegation contained in the paragraphs above as if fully set forth herein.

42. 42 U.S.C. §1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of

Columbia.

43. The First and Fourteenth Amendments of the United States Constitution protect the right to vote as a fundamental right. The First Amendment's guarantees of freedom of speech and association protect the right to vote and to participate in the political process. The right to vote is a fundamental constitutional right also protected by both the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *See, e.g.*, *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (per curiam); *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966) (Virginia's poll tax violates the Equal Protection Clause); *Anderson v. Celebrezze*, 460 U.S. 780, 786-88 (1983) (the right to vote is incorporated into the Due Process Clause).

44. Defendants' acts and omissions as alleged in this Complaint, which were taken under color of law, impose a severe burden on the fundamental right to vote of the affected GMU student applicants.

45. Defendants' acts and omissions as alleged in this Complaint, which were taken under color of law, amount to an arbitrary change in policy that was implemented without adequate prior notice and without a reasonable opportunity for the applicants to cure the issue before their applications were rejected.

46. As a result of Defendants' acts and omissions as alleged here, Plaintiff NVM has been forced to divert limited resources from voter education and get-out-the-vote initiatives to helping GMU students affected by this arbitrary change in policy, and to fielding questions and concerns from other prospective voters about the issue.

47. As a result of Defendants' acts and omissions as alleged here, Plaintiff BRYANT is in the immediate danger of being disenfranchised due to no fault of her own in the November 5, 2019 election. She and other applicants may continue to face difficulties registering to vote as a

result of this policy in the future.

48. The burdens imposed by Defendants' acts or omissions as alleged in this Complaint are severe and cannot pass muster even under rational basis review. Defendants lack any state interest in rejecting GMU students' voter registration applications for failure to provide a dorm name and room number, since doing so violates state policy and pronouncements.

49. As a result of the acts and omissions of Defendants as alleged herein, Plaintiffs have no adequate remedy under law.

50. Accordingly, Plaintiffs pray for relief as set forth more fully below.

## COUNT TWO
## DENIAL OF PROCEDURAL DUE PROCESS
## 42 U.S.C. § 1983, FOURTEENTH AMENDMENT

51. Plaintiffs re-allege and incorporate by reference every allegation contained in the paragraphs above as if fully set forth herein.

52. Section 1 of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of . . . liberty[] or property[] without due process of law."

53. To establish a procedural due process claim under the Fourteenth Amendment, Plaintiffs must show "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (citation omitted).

54. In this case, Plaintiff NVM has a cognizable liberty or property interest to direct and conserve its time and other resources to accomplishing its organizational mission and goals without being forced to divert these resources to addressing an arbitrary change in policy by the

Defendants that was made without adequate or any notice and could lead to the disenfranchisement of otherwise qualified GMU student prospective voters.

55. Plaintiff BRYANT and similarly situated GMU students have cognizable interests in being able to register to vote and exercise their right to vote. Defendants' arbitrary change of policy has deprived them of these interests without due process of law.

56. The deprivations at issue here have been taken under color of state law by Defendants in their capacities as the duly appointed official electoral board and general registrar for Fairfax County, Virginia.

57. Moreover, the cure process Defendants now claim they plan to implement to allow impacted applicants to provide dorm name and dorm number information to the general registrar by November 2, 2019, is also constitutionally inadequate. Not only does this process appear to violate the book closing deadline referenced in 1 Va. Admin. Code § 20-40-40(C) for applicants to submit supplemental information to the general registrar to cure a residence address issue, but the inconsistent and shifting information about whether a cure period would even be offered and, if so, what the deadline would be, is constitutionally inadequate since it is potentially an illusory remedy if the Defendants lack the legal authority to extend this deadline without a court order.

58. In addition, the procedures used to minimize the risk of erroneous deprivation are not constitutionally sufficient here. Defendant SCOTT sent out the first of the approximately 170 rejection notices on October 16, 2019—after the voter registration deadline for the November election had ended on October 15, 2019. Some rejection notices went out as late as October 21, 2019.

59. Defendant SCOTT has not retracted his rejection notices, and has failed to provide sufficient notice to affected students.

60. As a result of Defendants' denial of due process to the subject GMU students, Plaintiff NVM has diverted, and will continue to divert, its limited resources from its voter education and get-out-the vote initiatives to attempting to help GMU student applicants complete the voter registration process so that they can cast ballots in the November 5, 2019 election and in future elections.

61. As a result of Defendants' acts and omissions as alleged here, Plaintiff BRYANT is in the immediate danger of being disenfranchised due to no fault of her own in the November 5, 2019 election. She and other applicants may continue to face difficulties registering to vote as a result of this policy in the future.

62. As a result of the acts and omissions of Defendants as alleged herein, Plaintiffs have no adequate remedy under law.

63. Accordingly, Plaintiffs pray for relief as set forth more fully below.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully pray that the Court:

1. Enter judgment in favor of Plaintiffs and against Defendants on the claims for relief as alleged in this Complaint;

2. Enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that Defendants' change in policy to require the dorm name and room number on voter registration applications from GMU students domiciled on the GMU Fairfax campus without any or adequate prior notice and any reasonable opportunity to cure the issue prior to the book closing for the November 5, 2019 election violates the fundamental right to vote and due process under the First and Fourteenth Amendments to the United States Constitution.

3. Grant Plaintiffs preliminary or permanent injunctive relief by ordering that Defendants:

    (a) Order that Defendants count the votes cast in the November 2019 election by GMU students whose applications were rejected because they did not provide a dorm name or room number;

    (b) Enjoin Defendants from employing their current policy of rejecting voter registration applications from GMU students due to a failure to provide a dorm name and room number without first attempting to contact the voter directly by phone and email and giving the student a reasonable amount of time to provide the required information;

    (c) Order Defendants to accept voter registration applications submitted by GMU students who provide a university address unless there is affirmative evidence that the student does not live on campus;

    (d) Take all reasonable steps to provide notice to affected GMU students and the public of the relief ordered herein, including, without limitation, individually contacting each of the approximately 170 affected students by phone, in-person, or through email where the applicant included a personal email address in the voter registration application, as well as through press releases to the media, and on the Fairfax County elections website;

    (e) Provide additional training to poll workers who are working on November 5, 2019, at the Merten Hall polling place to educate them on how to process students who appear at the polling place and had their voter registration applications rejected because they failed to provide their dorm name and room number;

(f) Award Plaintiffs their reasonable attorneys' fees and costs pursuant to statute; and

(g) Grant Plaintiffs such other and further relief as may be just and equitable.

Dated: October 30, 2019

Respectfully submitted,

*/s/ Paul J. Weeks*
KIRKLAND & ELLIS LLP
Paul J. Weeks
Daniel T. Donovan (*pro hac vice – to be filed*)
Susan M. Davies (*pro hac vice – to be filed*)
Michael A. Glick (*pro hac vice – to be filed*)
Paul Quincy (*pro hac vice – to be filed*)
1301 Pennsylvania Avenue N.W.
Washington, D.C.  20004
Telephone:  (202) 389-5000
Facsimile:  (202) 389-5200

Ezra D. Rosenberg (*pro hac vice – to be filed*)
Julie M. Houk  (*pro hac vice – to be filed*)
John Powers (*pro hac vice – to be filed*)
Jacob Conarck (*pro hac vice – to be filed*)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 New York Avenue NW, Suite 900 Washington, D.C. 20005
Telephone:  (202) 662-8600
Facsimile:  (202) 783-0857