IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| NEW VIRGINIA MAJORITY EDUCATION FUND and AMYLA BRYANT,<br><br>    Plaintiffs,<br><br>v.<br><br>FAIRFAX COUNTY BOARD OF ELECTIONS; GARY SCOTT, in his official capacity as Director of the Office of Elections and General Registrar; and STEPHEN HUNT, KATHERINE HANLEY, and BETTINA LAWTON in their official capacities as members of the Fairfax County Board of Elections,<br><br>    Defendants. | Civil Action<br>Case No. 19-cv-1379 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION
FOR A PRELIMINARY INJUNCTION**

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). This lawsuit seeks relief to prevent approximately 170 George Mason University ("GMU") students—who are residents of the Commonwealth of Virginia and maintain their residence on the GMU Fairfax campus—from being disenfranchised in the upcoming November 5, 2019 Virginia state and local elections. Absent immediate judicial intervention, these students will be disenfranchised because of an arbitrary, eleventh-hour change in policy by the Fairfax County General Registrar, Defendant Gary Scott, and the Fairfax County Board of Elections. This about-face, which resulted in the rejection of voter registration applications from GMU students for failing to include their dorm name and room number on their voter registration applications, is

1

contrary to Virginia law and guidance on the Virginia State Board of Elections website, not to mention years of standard practice in Fairfax County. Defendants' conduct violates the fundamental right to vote and procedural due process, and threatens to cause irreparable harm in the form of disenfranchisement in the upcoming election. With that election less than a week away, Plaintiffs now bring this action, and hereby move the Court for a preliminary injunction requiring Defendants to register those applicants whose applications have been wrongly rejected and afford them the right to vote in the November 5 election.

## STATEMENT OF FACTS

Virginia state law requires that a qualified applicant must register to vote 21 days prior to an election in order to participate. Va. Code §§ 24.2-101, -400, -416. For the upcoming November 5, 2019 election, the voter registration deadline was on Monday, October 15, 2019. Va. Code § 24.2-416. Virginia residents are barred from voting a ballot that will be counted if they do not meet the registration deadline because, unlike a number of other states, Virginia does not permit eligible citizens to register during the absentee voting period or on Election Day.

In the weeks prior to the October 15 deadline, at least 170 students residing at GMU (including Plaintiff Amyla Bryant) executed voter registration applications in Fairfax County listing the address for GMU—either 4400 University Drive or 4450 Rivanna Way—but not listing a GMU dormitory name or room number. Such practice was common at GMU for at least the past several election cycles; indeed, as recently as this summer, students registered with the assistance of Plaintiff New Virginia Majority Education Fund ("NVM") who had supplied the 4450 Rivanna Way address were able to successfully register in Fairfax County even if they did not provide their dorm name and room number. *See* Decl. of Tram Nguyen ("Nguyen Decl.") ¶¶ 11-15 (attached as Exhibit 1).

After years of allowing GMU students to register to vote if they included the school's main address on their voter registration applications, Defendants—without announcement or explanation—changed course in the closing weeks of the current state and local election cycle to reject voter registration applications from GMU students if they do not include their dorm name and dorm room number on their voter registration applications. *See id.* Such change was made without any (let alone adequate) notice to GMU students or to organizations like NVM who conduct voter registration drives in Virginia, including on college campuses. *Id.* ¶¶ 14-15. In fact, the Fairfax County Elections Office website maintained by Defendants remains devoid of any mention of this change in policy, *see* https://www.fairfaxcounty.gov/elections/ (last visited Oct. 30, 2019), and such policy change is in direct conflict with voter registration guidance provided to the general public (including college students) on the Virginia Department of Elections' website which states: "[a] dormitory ***or college address can be an acceptable residential address and does not disqualify you from voting***," Va. Dep't of Elections, *College Student Info*, https://www.elections.virginia.gov/registration/college-student-info/ (last visited Oct. 30, 2019) (emphasis added) (excerpt attached as Exhibit 2).

To make matters worse, Defendants rejected more than 160 voter registration applications submitted by GMU students who did not include the dorm information on their registration forms ***after*** the October 15 close of voter registration, without providing those students with adequate notice or a meaningful opportunity to cure the dorm information issue. *See, e.g.*, Rejection Notices (attached as Exhibit 3). Instead, to the extent that Defendants contacted students at all, they expressed that the only remedy was to pay a fee and file an appeal in the Fairfax County Circuit Court, which would not guarantee a resolution prior to the election, or file a new registration form, which would have not resulted in their enrollment on the voter registration list in time for the

November 5, 2019 election. *Id.*; Decl. of Amyla Bryant ("Bryant Decl.") ¶ 23 & Ex. C (attached as Exhibit 4); Decl. of Micah Reaves ("Reaves Decl.") ¶¶ 24-25 & Ex. C (attached as Exhibit 5).

In order to prevent the imminent disenfranchisement of otherwise qualified GMU students residing on the GMU Fairfax campus and to prevent the future disenfranchisement of GMU students for the same reasons, Plaintiffs now respectfully move the Court for an Order compelling Defendants to allow the impacted applicants to cast a vote that counts in the November 5, 2019 election and to take reasonable efforts to alert the impacted applicants of this ability.

## ARGUMENT

To obtain a preliminary injunction, plaintiffs must establish "(1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in their favor; and (4) the injunction is in the public interest." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Plaintiffs meet each prong here.

### I. **Plaintiffs are Likely to Succeed on the Merits.**

Plaintiffs are likely to succeed on the merits of their claims based on violations of the First and Fourteenth Amendments because Defendants' rejection of GMU students' (including Plaintiff Bryant's) voter registration applications for failing to include a dormitory name and address (a) burden the fundamental right to vote, and (b) violated due process rights.

#### A. Defendants' Actions Improperly Burden the Fundamental Right to Vote.

The Court should enjoin Defendants' actions first and foremost because they are violating the fundamental voting rights of dozens of qualified Virginia electors.  When evaluating a practice that burdens the fundamental right to vote, courts "weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the

4

burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). "However slight th[e] burden may appear . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (plurality opinion) (quoting *Norman v. Reed*, 502 U.S. 279, 288-89 (1992)); *see also Greidinger v. Davis*, 988 F.2d 1344, 1352 (4th Cir. 1993) ("If a substantial burden [on plaintiff's right to vote] exists, . . . the restrictions on the right to vote must serve a compelling state interest and be narrowly tailored to serve that state interest."). Here, Defendants have severely burdened voting rights by precluding Ms. Bryant's and other students' valid registration while failing to identify a legitimate state interest.

> i. Preclusion of the Ability to Register Constitutes a Severe Burden on the Fundamental Right to Vote.

Barriers to voter registration are considered burdens on the fundamental right to vote. *Greidinger*, 988 F.2d at 1354 (holding the public disclosure of voters' Social Security Numbers on their voter registration records "substantially burdened" the fundamental right to vote); *see also Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1257 (N.D. Fla. 2016) (failure to extend registration deadline after hurricane "would categorically deny the right to vote" to "eligible voters who have yet to register" and therefore "is a severe burden that is subject to strict scrutiny"); *Hoblock v. Albany Cty. Bd. of Elections*, 341 F. Supp. 2d 169, 177-78 (N.D.N.Y. 2004) (observing that the right to vote "is too essential to permit a mere technicality to strip innocent citizens of their right to vote").

Here, the practices and procedures employed by Defendants have severely burdened Ms. Bryant's ability vote as well as NVM's efforts in helping students register for the pending

election (and beyond). In particular, Defendant Scott has rejected voter registration applications from students (including Ms. Bryant) listing their university's mailing address despite contrary guidance from the Virginia Department of Elections. These improper rejections contravene years of prior practices that NVM and others have relied upon when assisting students in registering to vote, which were based on the longstanding prior practice of Defendants of accepting voter registration applications listing the university mailing address. *See* Nguyen Decl. ¶¶ 11-15. And this is being done despite the Department of Elections' own guidance on their website advising college students they may use their university's mailing address to register to vote. *See* Ex. 2.

Furthermore, the Defendants' proposed "cure" process—by which Defendant Scott has represented to NVM that he will accept the dorm information from rejected applicants until 5:00 p.m. on November 2 and will allow the impacted applicants to vote in the November 5 election if they provide the information by the November 2 deadline—is inadequate and confusing. *First*, the rejection notices mailed by Defendants at the time of denial do not include any reference to a cure period or procedure. *E.g.*, Bryant Decl. Ex. C; Reaves Decl. Ex. C. They inform the students only that their form has been rejected on residency grounds and inform them that they can file a new form—without saying how or by when. *Second*, the mailed notices are not effective because they are often not received; GMU do not receive a notice from the college post office when they get a letter in the mail. Indeed, Ms. Bryant, for example, did not learn that she would be disenfranchised until speaking with a student in Spanish class on October 28, 2019. Bryant Decl. ¶ 18. *Third*, even though the registrar has the email addresses for most of the applicants, he ignored this reasonable means of contacting them in the days before the upcoming election.

"[T]he basic truth [is] that even one disenfranchised voter . . . is too many[.]" *League of Women Voters of N.C.*, 769 F.3d at 244. Here, Defendants' eleventh-hour rejection of

6

Ms. Bryant's and others' applications in contravention of longstanding county practice severely burdens their rights, and Defendants' inadequate cure cannot remotely remedy such burden.

                ii.      *Defendants Cannot Have a Legitimate State Interest in Improperly Rejecting Student Voter Registration Applications.*

Given the severity of the effect of Defendants' conduct on Ms. Bryant and other students' constitutionally protected activity, Defendants must present a compelling state interest that justifies the rejection of the voter registration applications that is narrowly tailored to fulfill that state interest. *See Greidinger*, 988 F.2d at 1354; *see also Obama for Am. v. Husted*, 697 F.3d 423, 431-36 (6th Cir. 2012) (finding high likelihood of success on merits where statute precluded citizens from voting without sufficient justification); *Doe v. Walker*, 746 F. Supp. 2d 667, 670, 683 (D. Md. 2010) (granting limited preliminary injunction where citizens would be otherwise disenfranchised by failing to extend to state deadline). While it is not contested that Defendants have an interest in ensuring voters reside where they are registered to vote, the rejection of voter registration applications using the university's mailing address, contrary to the State Department of Elections' own guidance and the practice of Defendants for years prior, "sweeps broader than necessary to advance electoral order." *Norman*, 502 U.S. at 290.

Therefore, Plaintiffs are likely to succeed on their claim that Defendants' actions burden the fundamental right to vote.

      B. <u>Defendants' Actions Violate Due Process.</u>

Defendants' last-minute change in policy also violates Plaintiffs' due process rights. Section 1 of the Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of . . . liberty . . . without due process of law." To succeed on a due process claim a plaintiff must show "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were

constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (citation omitted). Courts have repeatedly granted plaintiffs relief in cases asserting an injury to the right to vote without providing proper notice in violation of the Due Process Clause. *See*, *e.g.*, *Martin v. Kemp*, 341 F Supp. 3d 1326, 1337-40 (N.D. Ga. 2018) (finding plaintiffs established a substantial likelihood of success on the merits of procedural due process claims challenging Georgia's absentee ballot signature matching regime); *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 218-20 (D.N.H. 2018) (cure option for rejection of absentee ballots is illusory for certain voters); *Zessar v. Helander*, 2006 WL 642646, at *9 (N.D. Ill. Mar. 13, 2006) ("It is apparent that the risk of erroneous deprivation of the protected interest in absentee voting is not enormous, but the probable value of an additional procedure is likewise great in that it serves to protect the fundamental right to vote.").

> i.   *The Right to Vote is a Cognizable Liberty Interest.*

It cannot be disputed that college students residing on campus have a legally protected interest in being able to vote. *See Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live"); *see also Whatley v. Clark*, 482 F.2d 1230, 1231 (5th Cir. 1973) (holding invalid a Texas statute requiring that "a student in a school, college, or university" may be considered a resident of that jurisdiction only if he or she "intends to remain there and to make that place his [or her] home indefinitely after he ceases to be a student."); *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1357 (D. Ariz. 1990) ("Because voting is a fundamental right, the right to vote is a 'liberty' interest which may not be confiscated without due process."); *United States v. Texas*, 252 F. Supp. 234, 250 (W.D. Tex. 1966) ("[T]he right to vote is one of the fundamental personal rights included within the concept of liberty as protected by the due process clause."), *aff'd*, 384 U.S. 155 (1966) (per curiam); *Gray v. Sanders*,

8

372 U.S. 368, 380 (1963) (right to vote includes right to have vote counted). Likewise, NVM's voter registration activities constitute protected associational and free speech activity.

        ii.  *The Defendants' Actions Deprive Students' Rights.*

Likewise, it is clear that the rejection of Plaintiff Bryant's voter registration application is a deprivation of Ms. Bryant's liberty interest in voting. Put simply, there is no dispute that Ms. Bryant (and other applicants) are not otherwise qualified electors, who would be eligible to vote and whose registration applications would have been accepted but for Defendants' arbitrary and illegal policy change. Similarly, Defendants' actions have injured NVM's attempt to engage in voter registration activity without substantial confusion and need for additional education.

        iii.  *Defendant's Procedures Were Not Constitutionally Adequate.*

Defendants' procedures in depriving GMU students (including Ms. Bryant) of their right to register to vote were constitutionally insufficient. As an initial matter, particularly given the great weight and protections afforded the fundamental right to vote, Defendants, as state actors, must provide ample procedural protection. *See Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983) (citing *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980)). Accordingly, "[t]he Due Process Clause is implicated . . . in the exceptional case where a state's voting system is fundamentally unfair." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008); *accord Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978).

*First*, as set forth above, the Defendants' decision flies in the face of years of accepting and processing voter registration applications from GMU students who provided the 4400 University Drive or 4450 Rivanna Way addresses without providing their dorm name and room number. Nguyen Decl. ¶ 11. Indeed, as recently as this summer, applications using that address were accepted. *Id.* ¶¶ 11-15. Defendants' last-minute policy change, without any prior warning or explanation, is plainly deficient.

9

*Second*, Defendants' timing failed to afford a reasonable or meaningful opportunity to cure. Numerous rejection notices were not sent out until October 16, 2019 or later—after the voter registration deadline had ended. *See, e.g.*, Ex. 3. Some rejection notices went out as late as October 21, 2019. *Id.*

*Third*, Defendants' methodology for contacting students is not sufficient, as students regularly do not check their mailbox at GMU. *See* Reaves Decl. ¶¶ 15-16. Moreover, students have been receiving conflicting information regarding the cure process regarding the rejected voter registration applications. *See* Nguyen Decl. ¶¶ 20-24; Decl. of Eva Pecora ("Pecora Decl."). ¶¶ 13, 16-23, 25-26, 31, & Exs. B-E (attached as Exhibit 6); Reaves Decl. ¶¶ 17-21, 24-33, & Exs. B-D. College students are young, many are first-time registrants, and the process of curing applications Defendants have implemented can be confusing and intimidating. *See* Nguyen Decl. ¶¶ 20-24, 31; Pecora Decl. ¶¶ 20-23, 31-32; Reaves Decl. ¶¶ 17-33. Because of the conflicting information, confusing and intimidating cure process for largely young and first-time voting applicants, and infrequency with which some students may check their campus mail, the cure process here is illusory.

At bottom, Defendants have registered GMU students for years using the University mailing address without incident. Defendants' decision to depart from that well-settled practice in such close proximity to an election and with only a short window for students to cure (if they even receive the notice of deficiency at all) is constitutionally insufficient, such that Plaintiffs are likely to succeed on the merits of their due process claim.

## II. An Injunction is Necessary to Prevent Irreparable Harm.

Prohibiting students from voting in the November 5, 2019 election would cause irreparable harm that could not be cured after the election. Because the denial of the right to vote cannot be

10

undone once the election takes place, the rejected applicants here will have been disenfranchised with no future ability to cast their votes. In such circumstance, "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury." *League of Women Voters of N.C.*, 769 F.3d at 247; *see also Obama for Am.*, 697 F.3d at 436; *Council of Alt. Political Parties v. Hooks*, 121 F.3d 876 (3d Cir. 1997); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986); 11A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2948.1 (3d ed.) ("When an alleged deprivation of a constitutional right is involved . . . most courts hold that no further showing of irreparable injury is necessary."). Without the Court's intervention, more than a hundred students will be disenfranchised because of Defendants' refusal to continue the practice of approving voter registration applications in which students list their university's mailing address.

### III. The Balance of Equities Weighs in Favor of an Injunction.

The equities also favor an injunction forcing the Defendants to revert to their prior policy for this election. When weighing the equities involved between the disenfranchisement of more than a hundred voters and the inconvenience of the state to simply approve their voter registration applications, the balance tips heavily in the favor of an injunction. "[A]dministrative convenience" cannot justify the deprivation of a constitutional right. *Taylor v. Louisiana*, 419 U.S. 522, 535 (1975). The loss of up to 170 students' right to vote in the November 2019 election is at stake. The administrative inconvenience to the Defendants, however, involves either adding the affected students to the registration list—which is of no object because the county's electronic poll books are automatically updated with information from the voter registration file—and educating poll workers at the Merten Hall polling place (which is the only location serving on campus GMU students). The requested relief is easily accomplished with minimal burden on Defendants while

allowing those whose voter registration applications were improperly rejected the opportunity to exercise their fundamental right to vote. When weighing the equities between disenfranchising hundreds of voters versus the administrative inconvenience of approving hundreds of voter registration applications that were improperly rejected, the balance favors an injunction.

## IV. An Injunction Is in the Public Interest.

"By definition, '[t]he public interest . . . favors permitting as many qualified voters to vote as possible." *League of Women Voters of N.C.*, 769 F.3d at 247-48 (alterations in original) (quoting *Obama for Am.*, 697 F.3d at 437). The public has a "strong interest in exercising the 'fundamental political right' to vote." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) (citation omitted); *see also Newsom ex rel. Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) ("[U]pholding constitutional rights serves the public interest."). Plaintiffs here and hundreds of other students registered to vote relying on guidance from the state board of elections' website and years of prior practice in Fairfax County that they could use the university mailing address as their address on their voter registration application. Those applications were denied through no fault of their own. Giving these students the opportunity to participate in the upcoming election is clearly in the public interest.

In fact, courts routinely grant relief soon before an election when the facts demand it. *See, e.g.*, Order, *New Va. Majority Educ. Fund v. Va. Dep't of Elections*, No. 1:16-cv-01319-CMH-MSN (E.D. Va. Oct. 20, 2016), ECF No. 10 (extending voter registration deadline). This is particularly so where, as here, the burden on the state is so minimal—the continuation of a policy of approving voter registration applications listing a university's mailing address—compared to the irreparable damage of disenfranchising eligible citizens. *See United States v. Georgia*, 892 F. Supp. 2d 1367, 1377 (N.D. Ga. 2012) ("The potential hardships that Georgia might experience are

minor when balanced against the right to vote, a right that is essential to an effective democracy. In fact, the hardships that Georgia might suffer are minimized by the fact that the requested remedy is tailored to this particular circumstance."); *see also Ga. Coal. for Peoples' Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1268 (N.D. Ga. 2018); *Fla. Democratic Party v. Scott*, No. 4:16cv626-MW/CAS, 2016 WL 6080225, at *1 (N.D. Fla. Oct. 12, 2016) (extending voter registration deadline in Florida following Hurricane Matthew); *Ga. Coal. for the Peoples' Agenda, Inc. v. Deal*, 214 F. Supp. 3d 1344, 1345 (S.D. Ga. 2016) (extending voter registration deadline in Chatham County, Georgia).

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' preliminary injunction and order Defendants to:

(a) Count the votes cast in the November 2019 election by GMU students whose applications were rejected because they did not provide a dorm name or room number;

(b) Cease to employ their current policy of rejecting voter registration applications from GMU students due to a failure to provide a dorm name and room number without first attempting to contact the voter directly by phone and email and giving the student a reasonable amount of time to provide the required information;

(c) Accept voter registration applications submitted by GMU students who provide a university address unless there is affirmative evidence that the student does not live on campus;

(d) Take all reasonable steps to provide notice to affected GMU students and the public of the relief ordered herein, including, without limitation,

          individually contacting each of the approximately 170 affected students by phone, in-person, or through email where the applicant included a personal email address in the voter registration application, as well as through press releases to the media, and on the Fairfax County elections website;

(e)     Provide additional training to poll workers who are working on November 5, 2019, at the Merten Hall polling place to educate them on how to process students who appear at the polling place and had their voter registration applications rejected because they failed to provide their dorm name and room number; and

(f)     Grant Plaintiffs such other and further relief as may be just and equitable.

Dated: October 31, 2019           Respectfully submitted,

*/s/ Paul J. Weeks*
Paul J. Weeks (VA Bar No. 89656)
Daniel T. Donovan (*pro hac vice – to be filed*)
Susan M. Davies (*pro hac vice – to be filed*)
Michael A. Glick (*pro hac vice – to be filed*)
Paul Quincy (*pro hac vice – to be filed*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200

Ezra D. Rosenberg (*pro hac vice – to be filed*)
Julie M. Houk (*pro hac vice – to be filed*)
John Powers (*pro hac vice – to be filed*)
Jacob Conarck (*pro hac vice – to be filed*)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 New York Avenue NW, Suite 900 Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2019, I caused the foregoing to be electronically filed using the Court's CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

/s/ Paul J. Weeks
Paul J. Weeks (VA Bar. No. 89656)
Daniel T. Donovan, P.C. (*pro hac vice* motion forthcoming)
Susan M. Davis (*pro hac vice* motion forthcoming)
Michael A. Glick (*pro hac vice* motion forthcoming)
Paul Quincy (*pro hac vice* motion forthcoming)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
paul.weeks@kirkland.com
daniel.donovan@kirkland.com
susan.davies@kirkland.com
michael.glick@kirkland.com
paul.quincy@kirkland.com

Ezra D. Rosenberg (*pro hac vice – to be filed*)
Julie M. Houk (*pro hac vice – to be filed*)
John Powers (*pro hac vice – to be filed*)
Jacob Conarck (*pro hac vice – to be filed*)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 New York Avenue NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

*Counsel for Plaintiffs*